**Terry Lee LACKEY, a/k/a Terry Lee Jarnigan, and Diane Lackey, a/k/a Diane Jarnigan, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Nov. 21, 1978.

Certiorari Denied by Supreme Court Feb. 20, 1979.

Ben W. Hooper, II, Newport, Richard W. Pectol, Johnson City, for appellants.

William M. Leech, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, William M. Leibrock, Asst. Dist. Atty. Gen., Newport, for appellee.

## OPINION

WALKER, Judge.

Under a two-count indictment, Terry Lee Lackey, a/k/a Terry Lee Jarnigan, and Diane Lackey, a/k/a Diane Jarnigan, husband and wife, were charged with willful injury of another, Edna Stamey, by explosives (TCA 39–4912) and with malicious injury to personal property, a Chevrolet automobile, by explosives (TCA 39–1402). Similar charges were made against John Stamey, husband of the alleged victim, but he entered a plea of guilty the day before this trial and his case was disposed of at that time. The appellants will be referred to as Jarnigan since they are generally known by that name and prefer it.

On their joint trial in Cocke County October 19–21, 1977, Terry Lee Jarnigan was convicted of willful and malicious injury of another by means of an explosive and of willful and malicious destruction of property by means of an explosive, and was sentenced to consecutive terms of not less than 15½ years nor more than 21 years. Diane Jarnigan was convicted of aiding and abet-

ting in these offenses and was sentenced to concurrent terms of ten years.

This case arose out of the dynamiting of the car of Mrs. Edna Stamey in Newport on April 14, 1977, as the result of which Mrs. Stamey lost both of her feet and sustained other personal injuries.

Both appellants contend that they were denied their right to a fair and impartial trial by the court's denial of their motions for change of venue and the motion to quash the venire and by the court's leading questions on voir dire.

■ This case was the subject of pretrial publicity and a number of potential jurors had read or heard about the facts of the case prior to trial. Some knew that Terry Jarnigan had previously been convicted of arson. In ruling on the motion for a change of venue, the trial judge conditionally denied it but reserved a final decision to be based on how the jury selection proceeded. He stated that if a proper jury, free from bias, prejudice or opinion, could be selected, then the motion would be denied; however, if a proper jury could not be selected, then the motion would be granted. The question for determination here is whether or not the jurors who actually sat and rendered the verdict in this case were prejudiced by that publicity. *Adams v. State*, 563 S.W.2d 804 (Tenn.Cr.App.1978).

■ At the request of the appellants, the court held the examination of the prospective jurors in his chambers out of the presence of the tentatively selected jurors and other prospective jurors. Although this procedure was desired by the appellants, we do not approve the conduct of this part of the trial out of the courtroom and out of the presence of the public. When the court considers it advisable to examine prospective jurors out of the presence of others, the prospective jurors should be kept from the courtroom and then called individually into the courtroom for their examination in a public trial.

The jurors were carefully examined by the court, the state and both defense counsel to determine that they could be fair and impartial and were then sequestered. Although the appellants used all of their challenges, there is nothing to show that any juror was other than fair. Three of the jurors selected stated that they were aware of the reputation of Terry Jarnigan, but all stated that they could lay that aside and try the case strictly on the evidence and the law charged by the court. Three others and the alternate indicated that they had seen the publicity regarding the guilty plea of Stamey (a local newspaper had been in the courtroom that morning but was confiscated on order of the court), but said that would not affect their disposition of the case, which they would decide only on the basis of evidence heard in court. Every juror selected to sit swore to make a decision wholly on the evidence presented in court and that he or she would give a fair verdict, dismissing anything he or she might have heard or read about the case.

■ In his examination of the prospective jurors, the trial judge did not abuse his discretion. It is proper for him to take part in this examination. *See State v. Jefferson*, 529 S.W.2d 674, 684 (Tenn.1975). Any juror who indicated partiality was either excused for cause by the court or was challenged peremptorily.

■ The mere exposure of jurors to newspaper publicity is not constitutional error. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). One who is reasonably suspected of a serious crime cannot expect to remain anonymous. *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Murphy v. Florida, supra.* In *Murphy*, the United States Supreme Court said:

"Qualified jurors need not, however, be totally ignorant of the facts and issues involved.

'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a ver-

dict based on the evidence presented in court.' " (citation omitted)

■ The question of change of venue is largely within the discretion of the trial judge, and we may not reverse his action unless there is a clear abuse of discretion. *Adams v. State, supra; Broz v. State,* 4 Tenn.Cr.App. 457, 472 S.W.2d 907 (1971). The jury was composed of unbiased and unprejudiced jurors whose deliberations required six hours, and no prejudice has been shown. These assignments are overruled.

■ Diane Jarnigan moved for the judge to recuse himself on the ground that the judge's association with Edna Stamey, the victim of the crime, would result in inadvertent prejudice against the appellant and prevent her from obtaining a fair and impartial trial.

At the pretrial motion to recuse himself, the trial judge announced that, when in private practice, his firm had employed Edna Stamey as a secretary. She retained that position for about five years, until 1964. Since that time there had been no business or social relationship between them. In denying the motion the trial judge said that this case was no different from any other, and he held without hesitation that an absolutely fair and impartial trial could be granted without any impropriety or appearance of impropriety in view of the essentially severed relationship of 13 years ago.

While a trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned, the trial judge here had no doubt of his ability to preside fairly. *See ABA Standards Relating to The Function of the Trial Judge,* sec. 1.7, circumstances requiring recusation. There is nothing here to show that this past association biased the trial judge against the appellants. *See Moore v. State,* 568 S.W.2d 632, 635 (Tenn.Cr.App.1978).

Diane Jarnigan urges that the court erred by refusing her motion for severance. She insists that the jurors' knowledge of the reputation of her codefendant and of the guilty plea of Stamey required her case to be severed for her to have a fair trial. She also contends that she was unable to cross-examine her codefendant because he did not take the stand.

■ The guilty plea of John Stamey prior to trial is irrelevant on the question of severance of her case from that of her codefendant. Even if Diane Jarnigan had been tried separately, the proof at trial would have necessarily shown that her husband, the codefendant, was involved. All of the jurors repeated that they would not consider Terry Jarnigan's reputation or the plea of guilty by John Stamey. In *Dorsey v. State,* 568 S.W.2d 639 (Tenn.Cr.App. 1978), we found no prejudice when the trial judge refused a severance after a codefendant entered a plea of guilty. While Diane Jarnigan cites her inability to cross-examine her codefendant, no *Bruton* question is involved. (*Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).) No prejudice has been shown and the trial judge did not abuse his discretion in denying the severance.

■ Both appellants challenge the sufficiency of the evidence.

The state's evidence showed that about 8:00 p. m. on April 14, 1977, Edna Stamey drove her Chevrolet automobile to the Westgate Shopping Center parking lot in Newport at the request of her husband, John Stamey, and left it there while she accompanied him to White Pine. Her lights were on when she drove to the parking lot. On their return from White Pine, her husband stopped his truck 30 or 40 feet from her car and let her out. She testified that he "shot out of the parking lot like a bullet." Mrs. Stamey got in her car, started the engine and turned on the lights; an explosion immediately occurred, blowing off both her feet, breaking her right wrist and leg and mutilating a hand. The car, of course, was badly damaged. In Mrs. Stamey's absence while the car was on the parking lot, someone had placed dynamite and a blasting cap in the unattended car and had attached wires to its parking lights

so that when the lights were turned on the dynamite would explode. Mrs. Stamey had several insurance policies on which her husband had been named beneficiary, a fact of which he was aware. Unknown to him, however, she had changed the beneficiary. She further testified that the appellants knew her automobile.

Donald Eugene Pack was also parked in this lot on that evening. At about 9:15 p. m. he noticed Mrs. Stamey's vehicle and a pickup truck along its side. Two people were in the pickup truck. The driver would slump down in the truck when a car would pass. The truck was gray and had a utility bumper. Mr. Pack testified that the driver wore a white T-shirt and spit out of the window several times. Mr. Pack was not facing the truck and did not see anyone get out, but he noticed that it was gone at about 9:35 or 9:40 p. m. After he left the parking lot, he heard the explosion at about 10:30 p. m. He had also seen Terry Jarnigan that day driving a gray pickup truck with a utility bumper.

Terry Jarnigan had on a white T-shirt that night and he chewed tobacco. He was familiar with electrical wiring and had asked a junk dealer for dynamite fuse about a week before. His pickup truck fit the description of the one parked near the victim's car the night the dynamite was placed in it. Terry Jarnigan had been with John Stamey about 6:00 p. m. on the day of the explosion.

Evelyn Stewart testified that on April 14 Diane Jarnigan had called and asked her to come to her house that night. She and Earl Arms arrived at the appellant's apartment about 9:30 p. m., but the appellants were not at home. When the appellants returned 15 or 20 minutes later, Diane Jarnigan said she might want to borrow Mrs. Stewart's car after a while, and that it would not be wise for her vehicle to be seen out that road again. Mrs. Stewart testified that she asked Diane Jarnigan what they had done and Terry replied that they had put dynamite in a woman's car. Mrs. Stewart asked whose car, and Diane said it was Mrs. Stamey's. Terry said that Mrs. Stamey was

going to have John Stamey sent back to the penitentiary, that he (Stamey) had used Terry's gun in a bank robbery some years earlier and that was the reason Stamey had hired him to do it.

On cross-examination Mrs. Stewart admitted that she had not given this information to the officers the first or second time they talked with her. She denied that dynamite had ever been in her home, that she had received any from Earl Arms and that she ever had blasting caps in the presence of her son.

Gary Ray Stewart, age 15, called as a witness by Diane Jarnigan, first denied that he had seen any dynamite in the possession of his mother, Evelyn Stewart, or Earl Arms or either of the defendants. In a hearing outside the presence of the jury, the trial judge ordered the state to give defense counsel a statement the witness had given a state investigator and admonished the witness to tell the truth without any fear. Before the jury this witness testified substantially in accordance with his statement to the effect that he went with his mother to meet Earl Arms, who gave her nine sticks of dynamite. When they returned home, she called Terry Jarnigan who came to get the dynamite; Gary went home with Terry Jarnigan and saw him put it behind the stereo. Young Stewart further said that his mother also stored on a shelf some blasting caps that Arms gave her, but a few days after the explosion he and his mother threw some dynamite caps in the river. On cross-examination he said that Terry, Diane, their children and Terry's mother came to get some blasting caps. He said no one had threatened him, but that he had told different stories because he was scared.

Terry Jarnigan did not testify. In her testimony, Diane Jarnigan denied any knowledge of or participation in the crime. She said she was not with her husband in his truck between 7:00 and 11:00 p. m. the night of the bombing, but that Evelyn Stewart and Earl Arms came to her home at 8:00 or 8:30 p. m. and her husband arrived at 9:00 p. m. She stated that she had

seen dynamite and blasting caps at Evelyn Stewart's home about three weeks before the bombing but had never seen any in her own home. She emphatically denied making any statement to Mrs. Stewart concerning the dynamiting of the car or wanting to borrow Mrs. Stewart's automobile. She said that Mrs. Stewart was drinking gin on this occasion and also taking pain pills for a toothache as well as diet pills and appeared confused.

The appellants offered alibi witnesses to show that they were at home at the time the explosive device must have been placed on Mrs. Stamey's automobile. A cab owner testified that Terry's three-year-old son was riding with him in his truck between 8:00 and 8:30 p. m. the night in question. Terry's stepfather said he told him to see John Stamey about a carpentry job. This was in explanation of testimony that Stamey and Terry were together about 6:00 p. m.

From the evidence in this case, the jury was warranted in finding both appellants guilty of these offenses. As to Terry Jarnigan, the circumstantial evidence shows that he was present in his truck at the parking lot during the time the explosive must have been put in the car, that two people were in the truck and the driver frequently spit out of the window. It was also shown that Terry wore a T-shirt like the driver had on and chewed tobacco, spitting frequently, and that he had obtained dynamite and blasting caps and was familiar with electrical devices.

A witness placed the pickup at the Stamey car from approximately 9:15 p. m. until about 9:35 or 9:40 p. m. By Mrs. Stewart's testimony, the appellants returned home together at about 9:50 p. m., warranting the jury in believing that Diane Jarnigan was the passenger in the pickup truck. At that time she told Mrs. Stewart that she might want to borrow Mrs. Stewart's car and that it would not be wise for her to be seen out that road again. When, shortly after their return home, Terry Jarnigan said that he had put dynamite in a woman's car, Diane supplied the information that it was Mrs. Stamey's. The record sufficiently shows that Terry attached the explosive device to the car and Diane aided and abetted him in the crime. *Flippen v. State*, 211 Tenn. 507, 365 S.W.2d 895 (1963).

On appeal, the jury's verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *Hawkins v. State*, 527 S.W.2d 157 (Tenn.Cr. App.1975). It is the exclusive province of the jury to draw permissible inferences from the evidence. *Bailey v. State*, 479 S.W.2d 829 (Tenn.Cr.App.1972); *State v. Cabbage*, 571 S.W.2d 832 (Tenn.), filed October 10, 1978, at Knoxville. These assignments are overruled.

■ Both appellants assert that the court erred by failing to declare a mistrial when it was discovered that the state had withheld the statement of Gary Stewart, exculpatory to each of them, and which discredited the testimony of the state's chief witness, Evelyn Stewart.

At the conclusion of the state's case, counsel for Diane Jarnigan informed the court, out of the jury's presence, that during trial preparation he had interviewed Gary Stewart; Gary had made one statement in the presence of the juvenile judge and another separately to the TBI which counsel considered exculpatory, but the defense had never been given a copy. Counsel said that Gary had given him a statement that Evelyn Stewart and Earl Arms had dynamite in his presence two or three days before the explosion and that they threw some blasting caps in the river; that he had been threatened by his mother and Arms if he told this, and that Gary now claimed that what he had told defense counsel before was a lie. Counsel asked for the state to provide a copy of Gary's statement.

The district attorney general replied that he had the statement but that it was not exculpatory, that it told that Terry Jarnigan went to the Stewart home and got the dynamite.

The court ordered that the state allow defense counsel to see this statement. Both defense counsel then examined it and had it

available for use when Gary testified as a defense witness for Diane. His testimony before the jury was essentially the same as he had told counsel before trial and as recorded in his statement to the state agent.

The statement in question is not exculpatory on its face. It placed the dynamite in the hands of Terry Jarnigan and showed that Diane Jarnigan was one of those who came to get blasting caps. Its value to the appellants lay in its possible use to impeach the state's witness, Evelyn Stewart. The appellants' general motion for exculpatory material did not require its production and the state's failure to disclose it before trial did not violate the rule in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as contended by the appellants.

Counsel for Diane Jarnigan knew before trial that such a statement had been made to the state, but he had the oral statement of the witness to the same effect and had full knowledge of the substance of the statement the appellants say should have been disclosed. Counsel had cross-examined Mrs. Stewart on the damaging information and laid the ground for her impeachment by Gary's testimony contradicting her. The trial judge did not err in refusing to declare a mistrial on motion made after argument.

Both appellants complain that the prosecuting attorney's closing argument interjected his personal moral conviction of the appellants' guilt and presented argument outside the record.

■ In his opening argument the assistant district attorney general remarked:

"Now let's look first of all at Diane Jarnigan, who got up on that stand and swore to you that she had nothing to do with it . . . in hopes of making you believe that. I don't think you do, but I won't tell you why I don't believe.

THE COURT: Mr. Leibrock don't make personal reference. You may quote the evidence but don't make personal reference."

Without request the trial judge properly admonished the prosecuting attorney not to make personal references. A lawyer should not assert his personal opinion as to the credibility of a witness, or as to the guilt or innocence of an accused. Code of Professional Responsibility, Canon 7, DR 7–106, Trial Conduct, (C)(4); *ABA Standards Relating to the Prosecution Function*, sec. 5.8, Argument to the jury. The trial court's prompt disapproval cured any error from this improper argument.

■ The assistant district attorney general continued with the only objection by counsel as follows:

"You heard the witnesses. Diane Jarnigan said, 'We were hired to blow up Edna Stamey.' A woman who had befriended

. . .

MR. PECTOL: Your Honor, I object to that . . . that's outside this record.

MR. SCHMUTZER: That would be by the witness . . .

THE COURT: You may argue the case, don't . . . don't argue Gentlemen. Ladies and Gentlemen you find all the facts and whether it's said or not said you'll decide that."

There was no evidence in the record that Diane Jarnigan had made such a statement, and this statement itself is not found in the record. Evelyn Stewart had testified that, in her conversation with the appellants, Terry Jarnigan had said that "Mr. Stamey had hired 'em to do it." While the argument was improper and outside the record, the court's ruling was sufficient to call the disputed evidence to the jury's attention and render the remark harmless. With the court's instructions we do not think this remark affected the jury's verdict. *See Judge v. State*, 539 S.W.2d 340 (Tenn.Cr. App.1976). These assignments are overruled.

■ The appellants submitted no special requests for instructions. Terry Jarnigan complains of the court's instructions on weighing the credibility of the witnesses, particularly Evelyn Stewart, but he does not set forth the instructions he contends should have been given. The court charged the jury, in part:

"Every day of your lives you have judged people, their reliability, their truthfulness, and the accuracy of their statements. In the case now on trial you will apply that same knowledge and experience in finding the truth from the evidence presented to you. . . . Where evidence is received relative to gin or pills which may affect the central nervous system or induce intoxication or otherwise alter the state of consciousness, you may consider that evidence insofar as it reflects on the ability of the witness to see, know, understand and tell what happened at the time and on the occasion in question. Where you are satisfied that a witness is interested on the outcome of the litigation for whatever reason, whether for personal advantage or vindication, or for hope of reward, or for whatever purpose, you will of course consider that testimony or evidence with greater care, giving it just such weight and value as you believe it deserves under all the facts and circumstances."

The instructions as given were correct and covered the case. If the appellant desired further instructions, he should have submitted a special request.

We have carefully considered all assignments of error and fail to find any grounds for disturbing the lower court's judgment as to either appellant.

It is affirmed.

O'BRIEN and BYERS, JJ., concur.