IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

**STATE OF TENNESSEE v. KEVIN BUTLER**

**Appeal from the Circuit Court for Rutherford County
No. F70462     David M. Bragg, Judge**

_____

**No. M2015-00596-CCA-R3-CD – Filed March 4, 2016**

_____

The Defendant-Appellant, Kevin Butler, was convicted by a Rutherford County jury of aggravated robbery and sentenced as a Range II, multiple offender to fourteen years in the Tennessee Department of Correction.  The sole issue presented for our review is whether the trial court erred in allowing the State to engage in prosecutorial misconduct during closing argument.  Upon review, it is necessary to remand this matter for entry of an amended judgment which reflects the sentence as stated in the trial court's order denying the motion for new trial.  In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed
Remanded for Entry of Amended Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald L. Melton, District Public Defender; Russell N. Perkins, Assistant Public Defender, Murfreesboro, Tennessee, for the Defendant-Appellant, Kevin Butler.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Jennings H. Jones, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Although the Defendant-Appellant does not challenge the sufficiency of the evidence in this case, a brief recitation of the facts is necessary to resolve whether the State engaged in prosecutorial misconduct during their closing argument.  The victim, Karl Miller, was robbed at a truck stop in Rutherford County on December 24, 2012.  While doing some work on his computer, an individual knocked on his window and asked for a ride and some money.  When the victim rolled down the window, the

individual jumped through it, forced the victim down on his back with a hammer, and demanded money. During the struggle, the perpetrator dropped his hat in the victim's truck. Although the victim was unable to identify the perpetrator, the hat recovered from the victim's truck later tested positive for the Defendant-Appellant's DNA. The Defendant-Appellant was arrested and indicted by the Rutherford County Grand Jury for especially aggravated robbery. Upon arrest, the Defendant-Appellant provided Detective Michael Yates of the Murfreesboro Police Department with a video recorded statement confessing to robbing the victim, which was played for the jury at trial. Significantly, the Defendant-Appellant confirmed that he climbed through the victim's truck window, took $50 from the victim while holding a hammer, and left his hat in the victim's truck.

At trial, the Defendant-Appellant testified and provided an alternative explanation for the events that occurred on the night of the offense. He testified as follows:

> What happened was, I was there, and I was waiting for a check that I had received a couple of days before that to register. Those Comdata checks, you have got to call and get them registered. And I was just kind of waiting.

> So, I did drive around the parking lot, and I did knock on [the victim's] door. And I was asking for a couple of bucks. Basically I never got a chance to say what for. I was really asking for -- so I could buy me a couple of Black & Milds or even one just to smoke during that time while I waited.

> . . . .

> But I was talking to him at the door. And I was trying to explain that, and at the same time explain about the Comcheck situation.

> And I didn't have a need to open or climb through the window. [The victim] let me in the cab, and we were talking, you know.

> And at the time, I was still explaining to him what my situation was. And he was telling me, you know, there is a way to make money. And I was a little bit embarrassed by the fact because he asked me to do something -- you know, perform a sexual favor. And it was totally out of line.

> But the only thing that made it so out of line to me was because of my past. And that's what made my embarrassment more worse than

anything I could imagine. Because I have been abused, you know, as a teenager. And I never had a chance –

. . . .

But, anyway, the money was presented. And when it was presented, I took it, and I ran.

. . . .

I never threatened [the victim] with a hammer. I believe the whole time I may have had my hat in my hand. That's how I ended up losing my hat, because I went to lay it down. And I believe I just left it. You know, and if a hat looks threatening, so be it.

When asked why he did not tell Detective Yates this version of his story, the Defendant-Appellant replied, "I didn't want it to come out like that. . . . I was embarrassed. I'm still embarrassed. Been embarrassed for 22 years, bottom line, about that kind of stuff." When asked if he recalled telling Detective Yates that he had used a hammer, the Defendant-Appellant replied, "I remember him asking me did I have something in my hand . . . . And I said, my hat. . . . And after he continued to say hammer, I probably just let it go." He admitted that he told Detective Yates that he had jumped through the window of the victim's truck and demanded money. He also agreed that he did not tell Detective Yates that the victim had asked him for sex.

The Defendant-Appellant conceded that his final statement to Detective Yates closely matched the victim's description of the robbery. He denied telling Detective Yates that he used a hammer to threaten the victim. After the State replayed his response, the Defendant-Appellant maintained that he said "hat" rather than "hammer." He agreed that he had no proof of prior sexual assaults, but he thought that the jury "should take him at his word." He further stated that he had been informed of his rights before his interview and, although he knew that he did not have to lie, he chose to lie anyway. He also testified that neither the statements he made to Detective Yates nor the statements about the robbery that he made in a subsequent phone call to his mother on Detective Yates's cell phone were true.

The Defendant-Appellant further confirmed that he had written a letter apologizing to the victim for the robbery. He said that the content of the letter was the truth "for the most part," and that his statement, "I went to the Pilot travel stop and robbed an old man" was true. He clarified that he was admitting to "robb[ing] an old

man" and that the victim "probably was" placed in fear when the robbery took place. However, he denied using a hammer to threaten the victim or telling Detective Yates that he had a hammer. When asked how many lies he had told police, the Defendant-Appellant stated, "I wasn't counting. I just didn't tell them the truth." He insisted that he was telling the truth at trial.

During the State's closing argument, the prosecutor attacked the Defendant-Appellant's credibility as a witness, asserting that he had lied during his interview with Detective Yates, that he had lied in the telephone conversation with his mother, and that he had lied in his testimony at trial. When the prosecutor said, "That's what we have got here. We have a fellow who has come in, and he's lied – ," defense counsel objected, arguing that the prosecutor was asserting an improper personal opinion as to the Defendant-Appellant's credibility as a witness. The trial court sustained the objection.

Defense counsel raised the same objection to the following statements made by the prosecutor during the State's closing:

> 1. The first lie was when he says, oh, I wasn't there.

> 2. And then he lies again in the same interview. I'll rephrase. I apologize. He gives another version to his mother on the phone.

> 3. The defendant lied until he knew he was finally caught. Well, I'll rephrase. Can't say that.

> The defendant told various versions until he knew he was caught. The defendant said, I wasn't there, it wasn't me, huh-uh (negative), until the hat with the D.N.A. was found in the truck. And then he started telling the truth. And then he lied to his mom. And then he lied to you.

Defense counsel again argued that the prosecutor was asserting a personal opinion about the Defendant-Appellant's credibility. All three objections were overruled. In overruling the objection to the first statement, the trial court stated:

> The jury had the opportunity to listen to the proof. They'll make a decision as to whether or not the argument is accurate or not. They have already been advised that statements and arguments of Counsel are not evidence.

Defense counsel raised additional objections to the following portion of the State's closing argument:

Who is credible? Who is more or less likely to tell the truth?

Well, the detective, Detective Yates works for Murfreesboro Police Department. If there is a not guilty in this case and he goes back to the Police Department, his pay doesn't get docked. He doesn't get demoted. He doesn't get sent home. If there is a guilty at the end of this case, he doesn't get a reward. He doesn't get a bonus.

. . . .

He doesn't get a bonus. He might get an at-a-boy. He might get a pat on the back and told good job.

What motive does [the victim] have to tell anything but the truth?

. . . .

[The victim] lives in Florida. He had to drive up for today. What's his motive to tell the truth -- or pardon me – what's his motive to lie?

If it is as [defense counsel] and his client have argued, that he is here on fallacy -- if the truth of the matter is that [the victim] did, in fact, solicit sexual favors from the defendant, do you think he would have bothered to come up from Florida?

Defense counsel argued that the prosecutor's statements amounted to improper vouching for the credibility of the State's witnesses. The State responded that these assertions were to rebut the Defendant-Appellant's attack on the credibility of the victim's testimony. The trial court overruled the objections.

After closing arguments and following deliberation, the jury convicted the Defendant-Appellant of aggravated robbery. On September 4, 2014, the trial court sentenced the Defendant-Appellant as a Range II, multiple offender to sixteen years with eighty-five percent release eligibility. A motion for new trial was filed on October 6, 2014, and addenda to the motion were filed on January 6 and January 8, 2015. A hearing took place on February 6, 2015, and the trial court issued a written order on June 5, 2015, which reduced the Defendant-Appellant's sentence to fourteen years based on the application of an improper enhancement factor but otherwise denied the motion for new trial. This timely appeal followed.

# ANALYSIS

The Defendant-Appellant argues that the trial court erred in allowing the prosecutor to engage in improper argument on multiple occasions during the State's closing argument. He contends that these improper arguments were so inflammatory that it prejudiced the outcome of his trial. Citing State v. Goltz, 111 S.W.3d 1 (Tenn. Crim. App. 2003), he maintains that the "pattern of improper argument" asserted by the prosecutor, to which he did object during the State's closing, amounted to prosecutorial misconduct sufficient to warrant granting a new trial. In response, the State contends, and we agree, that the closing arguments in this case were neither improper nor prejudicial to the outcome of the Defendant-Appellant's trial.

Prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. State v. Sexton, 368 S.W.3d 371, 419 (Tenn. 2012) (citing State v. Thomas, 158 S.W.3d 361, 412-13 (Tenn. 2005) (appendix)). As applicable to this case, this court has recognized that "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7-106(c)(4). Goltz, 111 S.W.3d at 6 (Tenn. Crim. App. 2003) (citing AM. BAR ASS'N, STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8-5.9 COMMENTARY (ABA PROJECT ON STANDARDS FOR CRIMINAL JUSTICE, APPROVED DRAFT 1971)).

In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). This court must consider the following factors when determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict:

> (1) the conduct complained of viewed in the light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also State v. Chalmers, 28 S.W.3d 913, 917 (Tenn. 2000) (citations omitted).

The Defendant-Appellant challenges the prosecutor's statements that he "lied" during his interview with Detective Yates, that he lied in the telephone conversation with his mother, and that he lied in his testimony at trial. He maintains that these comments constitute improper arguments regarding his credibility as a witness based on the prosecutor's personal belief or opinion. See Goltz, 111 S.W.3d at 6. We disagree.

Here, the Defendant-Appellant admitted at trial that none of his pre-trial statements to his mother or Detective Yates were true. His video recorded statement also shows that he initially denied any knowledge or involvement in the robbery. He admitted his involvement in the robbery only after he was confronted with the DNA evidence against him. Based upon our review of the record, we conclude that the prosecutor's statements were "predicated on evidence introduced during the trial" rather than personal belief. See Gann, 251 S.W.3d at 459 (quoting Sutton, 562 S.W.2d at 823); State v. West, 767 S.W.2d 387, 394 (Tenn. 1989) (citing State v. Beasley, 536 S.W.2d 328, 330 (Tenn. 1976)) (citing with approval cases wherein "remarks of counsel in argument making reference to 'lying' defendants or defense witnesses [are] allowed, if based upon evidence in the record.").

The Defendant-Appellant has also failed to carry his burden of proof under Judge. The Defendant-Appellant testified at trial and admitted that he told several prior untruths about this case. He also challenged the testimony and credibility of the victim and Detective Yates. In our view, it was only natural for the prosecutor to engage in the instant argument because the Defendant-Appellant's testimony was in direct conflict with his own prior statements and the statements of the victim and Detective Yates. We also fail to see any prejudice requiring reversal in this case because, although the Defendant-Appellant painted a different picture of the circumstances surrounding the robbery to the jury, he nevertheless admitted to robbing the victim. The jury chose not to believe the Defendant-Appellant's trial testimony regarding his use of the hammer during the robbery, as was their prerogative. The Defendant-Appellant is not entitled to relief.

## CONCLUSION

Based on the aforementioned proof, the judgment of the trial court is affirmed. In the trial court's order denying the Defendant-Appellant's motion for new trial, the trial court ordered the Defendant-Appellant's sentence to be reduced from sixteen to fourteen years. It also ordered the State to prepare the order or the amended judgment for the court to sign. Our review of the record does not contain an amended judgment which reflects the Defendant-Appellant's fourteen-year sentence. Accordingly, we remand this

matter to the trial court for entry of an amended judgment consistent with the trial court's order.

_____
CAMILLE R. McMULLEN, JUDGE