IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville July 26, 2016

## MARVIN DAVIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 11-06514    J. Robert Carter, Jr., Judge**

_____

**No. W2015-02129-CCA-R3-PC  -  Filed November 16, 2016**

_____

The Petitioner, Marvin Davis, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his rape of a child conviction, for which he is serving a twenty-five-year sentence.  He contends that he received the ineffective assistance of counsel and that the post-conviction judge erred in denying the Petitioner's motion to recuse.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Patrick M. Brooks (on appeal and at hearing) and Josie S. Holland (on appeal), Memphis, Tennessee, for the appellant, Marvin Davis.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; Dru Carpenter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's conviction pertains to the rape of his girlfriend's six-year-old great-niece.  The victim frequently stayed in the home the Petitioner and his girlfriend shared and slept in the same room with them.  According to the trial proof, the Petitioner woke the victim while the Petitioner's girlfriend slept, carried the victim upstairs, and sexually penetrated her vaginally and anally on two occasions.  The second of these occasions is the basis for the conviction.  On appeal, the Petitioner challenged the sufficiency of the evidence and the trial court's evidentiary ruling admitting a videotaped forensic interview of the victim.  This court affirmed the conviction, and the supreme court denied the Petitioner's application for permission to appeal.  *See State v. Marvin*

*Davis*, No. W2013-00656-CCA-R3-CD, 2014 WL 1775529 (Tenn. Crim. App. May 1, 2014), *perm. app. denied* (Tenn. Dec. 5, 2014).

The Petitioner filed the present post-conviction action alleging he received the ineffective assistance of counsel from the two attorneys who acted as his trial counsel. Post-conviction counsel was appointed. Post-conviction counsel filed a motion for the judge to recuse himself based upon alleged bias in favor of the State due to a ruling the judge made at the Petitioner's trial, and the judge denied the motion in a written order.

At the post-conviction hearing, co-counsel testified that his duties involved analyzing the medical evidence, jury selection, opening statements, medical testimony, and cross-examination. He said lead counsel handled all other aspects of the case and made the major decisions. He said that lead counsel was now deceased.

Co-counsel testified that he did not know why lead counsel had not objected to the victim's mother's testimony that she had taken the victim to a hospital after the victim stated the Petitioner had "freaked on" the victim. He said he did not think the statement was hearsay because it had not been offered for the truth of the matter asserted. Co-counsel did not know why lead counsel had not objected when Dr. Karen Lakin[1] testified that the victim told Dr. Lakin that the victim "freaked on" the victim but said he did not think the evidence had been offered for the truth of the matter asserted. In his opinion, the victim's statement to Dr. Lakin was made for purposes of medical diagnosis and treatment. He did not know why lead counsel repeated the victim's statement during cross-examination of witnesses and said he thought it was "how the cross examination was phrased."

Co-counsel acknowledged that a motion pursuant to Tennessee Rule of Evidence 412 regarding "other potential explanations for injuries or the testimony of Dr. Karen Lakin" was filed but did not know why lead counsel had not argued the motion at a hearing. Co-counsel said the motion pertained to allegations that two individuals other than the Petitioner sexually abused the victim. The motion was received as an exhibit. Co-counsel said the only injury to the victim identified by the evidence was a hymenal notch which, according to Dr. Lakin, was a non-specific finding that might or might not indicate sexual activity.

---

[1] Dr. Lakin is referred to as Dr. Larkin in this court's opinion in the previous appeal and as Dr. Lakin in the trial transcript and the post-conviction hearing transcript. Dr. Lakin testified at the trial and spelled her name at the beginning of her testimony. We use the spelling provided by the witness.

Co-counsel testified that he had adequately prepared lead counsel to cross-examine Patricia Lewis, the child forensic interviewer who testified for the State. He did not know why lead counsel had not cross-examined Ms. Lewis regarding what the Petitioner believed were leading questions the prosecutor had asked Ms. Lewis. Co-counsel said that in most cases, an interviewer would say that he or she had not asked leading questions because they were trained not to do so. Co-counsel said that lead counsel might not have asked about alleged leading questions in order to reserve the issue for closing argument. He said lead counsel had a good idea of how the forensic interviewer would testify at the trial because lead counsel had been able to cross-examine the interviewer at an earlier hearing.

Co-counsel testified that lead counsel had been organized, kept her files well documented, saw her clients many times, and conducted appropriate investigation. He said lead counsel had empathy toward the Petitioner, and he noted that her file relative to the Petitioner's case indicated she had worked a "vast amount of time," prepared for trial, prepared for the medical examiner's testimony, "went above and beyond" to visit the Petitioner in jail, and had been extremely meticulous and organized.

The Petitioner elected not to testify at the hearing. After receiving the proof, the post-conviction court denied relief in a written order. This appeal followed.

## I

## Ineffective Assistance of Counsel

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*,

506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A. Failure to Object to Hearsay Evidence

The Petitioner contends that his trial attorneys provided ineffective assistance when they failed to object (1) to the victim's mother's direct examination testimony that she had taken the victim to a hospital because the victim stated the Petitioner had "freaked on" the victim and (2) to Dr. Lakin's direct examination testimony that the victim told Dr. Lakin that the victim's aunt's boyfriend had "freaked on" the victim. The Petitioner argues that the testimony was inadmissible hearsay and that counsel should have requested a hearing for the court to determine whether the statements were "made under circumstances indicating trustworthiness" pursuant to Tennessee Rule of Evidence 803(26)(C), the hearsay exception pertaining to admission of prior inconsistent statements of a testifying witness. The State contends that the Petitioner's trial attorneys did not provide ineffective assistance because the testimony was not hearsay.

### 1. **<u>Victim's Mother's Testimony</u>**

We consider, first, the Petitioner's argument that counsel provided ineffective assistance in failing to object to the victim's mother's testimony. Co-counsel was not asked why he did not object, but when he was asked why lead counsel might not have objected, he testified to his opinion that the evidence was not offered for the truth of the matter asserted.

The trial transcript, which is contained in the record of the Petitioner's previous appeal, reflects the following testimony:

> Q.     Did you take your daughter to LeBonheur Children's Hospital on that day?
>
> A.     Yes, ma'am.
>
> Q.     Why?
>
> A.     Because she told me that morning that [the Petitioner] had freaked on her. And her stomach was hurting real bad.
>
> Q.     Had she been acting differently or complaining of anything before she talked to you about [the Petitioner]?
>
> A.     Yes.
>
> Q.     What had she been complaining about?
>
> A.     Bad stomach aches.
>
> Q.     Had she ever complained about her stomach hurting like that before?
>
> A.     No, ma'am.
>
> Q.     Did you ask her about her stomach ache?
>
> A.     Yes, ma'am.

> Q. And after talking to her, is that why you took her to LeBonheur?
>
> A. Yes, ma'am.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Such evidence is inadmissible unless it qualifies as an exception. *Id.* at 802.

In the present case, the witness was asked why she took the victim to the hospital, and she responded that she had done so because of the statement the victim made about the Petitioner's actions and about the complaints of a stomach ache. The import of the testimony was to explain why the witness took the victim to the hospital, not to prove the Petitioner's conduct toward the victim. The evidence, when elicited from the victim's mother, was not offered to prove the truth of the matter asserted and, therefore, the Petitioner failed to show that his trial attorneys provided deficient performance when they did not make a hearsay objection.

With regard to the question of prejudice, we note that the victim testified at the trial regarding two rapes, one of which the State elected as the basis upon which it sought conviction. The victim stated that the Petitioner woke her, carried her upstairs, removed her pants, and put his "middle part" into her vagina and her "behind." In light of this testimony, we fail to discern how the Petitioner could have been prejudiced by the admission of the complained-of evidence.

We have considered the Petitioner's argument that his trial attorneys should have requested a hearing for the trial court to determine whether the victim's statement was made "under circumstances indicating trustworthiness" pursuant to Tennessee Rule of Evidence 803(26)(C). This rule pertains to admission of otherwise hearsay statements that qualify as prior inconsistent statements of a testifying witness. The Petitioner has not explained this rule's relevance to the present case, and we see none. The Petitioner failed to show that his trial attorneys should have requested a hearing to determine the trustworthiness of a prior inconsistent statement of a testifying witness. He is not entitled to relief on this basis.

## 2. **Dr. Lakin's Testimony**

We turn to the Petitioner's contention that his trial attorneys provided ineffective assistance by failing to object to the victim's statement to Dr. Lakin that the Petitioner

had "freaked on" the victim.  The trial transcript reflects the following direct examination testimony:

       Q: . . . When you're asked to perform a sexual assault examination on a patient[, a]re there certain procedures that you follow?

       A.     Yes.

       Q.     Can you tell us what those are?

       A.     Well, first and foremost, we always take a medical history of the patient.  One of the things that I emphasize and certainly want to train people is that when we are examining our children for any type of abuse, first and foremost, the medical condition is very important, and so, we need to approach the patient as we do all of our medical patients and medical history is very important for us to make a diagnosis.  So, we always go in and ask pertinent questions related to why are you here today.  What is the reason for you presenting.  And in some situations, we have to get that information from parents because the children are too young to give us that information.  But if the children are verbal, then we try very much to ask them specific questions about their condition as well.

. . . .

       Q.     When you are asking about why a patient is there and in [a] sexual assault examination situation, are you looking for every detail of the assault that has brought them to your clinic?

       A.     Not every detail.  Again, our part is as the medical provider to make sure that the child is examined and treated for the complaint at hand which in this particular situation would be a complaint of sexual assault so it's very important for us to know information that would help us in the examination of the patient.  For example, any details that the patient may give us about what part of the body has been assaulted helps us target our examination.  The type of assault that occurs will determine what type of testing we do.  So that is – and then, also, the history that's given to us will often times help us in terms of the interpretation of any findings that we have on the examination.

Q. Did you have the opportunity to meet with [the victim] on February 1st of 2011?

A. Yes, I did.

. . . .

Q. And what did you learn from her?

A. [The victim] was interviewed and she was interviewed alone after I had just introduced myself and spoke to her mother. And when I asked her why she was there, she told me that she had been brought to the clinic because her aunt's boyfriend and this is what she actually said to me was that her aunt's boyfriend had freaked on her.

Q. Did she have any physical complaints, any pain that she talked to you about?

A. She did speak to me about having pain during the incident but at the time of the actual examination, she did not.

Tennessee Rule of Evidence 803(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment."

Dr. Lakin testified about her protocol in interviewing suspected victims of child sexual abuse and the specifics about which she questioned the individuals in order to make an accurate diagnosis and provide treatment. She said that her questions were designed to ensure the patient was treated for the complaint at hand, that it was important to obtain information that helped in the examination, that details of the body part that had been assaulted was helpful in targeting the examination, and that the nature of the assault was determinative of the appropriate testing, and that the history provided by the patient assisted the medical professionals in interpreting any findings relative to the examination. The victim's statement about the Petitioner having "freaked on" her was made during the course of this interview. The trial record reflects that the victim's statement to Dr. Lakin was made for the purposes of medical diagnosis and treatment. *See State v. McLeod*, 937 S.W.2d 867, 870-71 (Tenn. 1996) (holding that in child sexual abuse cases, the admissibility of the victim's statement to a medical provider is predicated upon a thorough examination of the circumstances surrounding the statement relative to the

-8-

statement's truthfulness); *see also State v. Gordon* 952 S.W.2d 817, 822 (Tenn. 1997). Co-counsel testified that in his opinion, the testimony did not contain hearsay because the victim's statement had been made for the purposes of medical diagnosis and treatment.

The Petitioner failed to show that his trial attorneys provided deficient performance by not objecting to this testimony, and because the evidence was properly admitted, he likewise failed to demonstrate that prejudice occurred due to his attorneys' lack of objection. As we have noted, the victim testified about the facts of the rape, and the jury considered her testimony when rendering its verdict. Viewed in this context, prejudice cannot be said to have resulted from counsel's lack of objection. The post-conviction court did not err in denying relief. The Petitioner is not entitled to relief on this basis.

## B. Method of Cross-Examination

The Petitioner contends that lead counsel and co-counsel provided ineffective assistance when they emphasized the victim's mother's testimony and Dr. Lakin's testimony on defense cross-examination regarding the victim's statement that the Petitioner "freaked on" her. He complains that counsel used this terminology in their cross-examination questions. The Petitioner argues that counsel added credibility to the victim's hearsay assertion and offered it to the jury for its truth. The State contends that the Petitioner's attorneys' use of the terminology was part of an effort to cross-examine the witnesses thoroughly and that the evidence was not hearsay.

The cross-examination to which the Petitioner refers consists of a portion of lead counsel's questioning of the victim's mother and a portion of co-counsel's cross-examination of Dr. Lakin. The first involved lead counsel's asking the victim's mother if she recalled having been asked by the police if she had checked the victim's genital area after the victim reported that the Petitioner "freaked on" her. After the victim's mother said she remembered the question, the court stated that the question had been improper and instructed the jury that the testimony of witnesses was not evidence but that

> What statements [witnesses have] made sometime in the past with very few limited exceptions, they're not evidence, but they're designed to help you and if a witness in the past has made a consistent statement with what they've said or they've made an inconsistent statement with what they've testified to here, that's for you to consider in weighing the evidence.

But what they say here today is the evidence. These other statements, that's what they're for and that's why we go through this and we have certain forms that we have to use[.]

Lead counsel then rephrased the question, "At any time after . . . [the victim] told you that [the Petitioner] had freaked on her, did you check any of [the victim's] genital area or anything like that? Answer, yes, I did. Do you remember that?"

The second instance of which the Petitioner complains involved co-counsel's asking Dr. Lakin about the history she had recorded when Dr. Lakin examined the victim. The following questioning, which related to the date of the incident under indictment, is pertinent:

Q. Do you remember writing a history on this?

A. Yes. And I may have to go back and look at that again.

Q. Yes. Page two, of your history.

A. Yes. Yeah, that history did come from the mother.

Q. Okay. Because it says ten year old who disclosed to mom –

A. Six.

Q. Six year old who disclosed to mom that Marvin freaked on her and put his thing in the victim's –

A. Vagina.

Q. Vagina. The incident occurred last Friday, the 21st. So you're saying you got that from the mother?

A. The mother.

Q. And not the child?

A. Right. The only thing I got from the child is what's in quotation marks.

Q.     Okay.

A.     Which is [under the assessment section].

Q.     Okay.  And she didn't tell you, the child or the mother didn't tell you of a second incident, right?  Any other incident besides the one on the 21st?

A.     No.

When considered in context, the complained-of questioning by the Petitioner's attorneys was brief and occurred in the context of overall thorough cross-examination of two State's witnesses.  The questions were not posed based upon an assumption that the victim's underlying statement had been truthful.  The purpose of the questioning in the case of lead counsel's cross-examination of the victim's mother was to determine whether the victim's mother had checked the victim's vaginal area after the victim's report of the Petitioner's "freaking on" her.  Ultimately, the victim's mother stated that she had checked the victim's vaginal area but had not seen anything suspicious.  The purpose of the questioning in the case of co-counsel's cross-examination of Dr. Lakin was to establish the date the incident occurred and that only one incident was reported.  As we stated in the previous section, the evidence elicited on direct examination regarding the victim's report of the Petitioner's having "freaked on" her was not hearsay.  The Petitioner failed to establish that his trial attorneys performed deficiently in their cross-examination of the victim's mother and Dr. Lakin.

Relative to the question of prejudice, we note, as we did in the previous section, the victim's testimony about the facts of the offense.  Considered in light of the victim's testimony establishing the Petitioner's conduct constituting guilt of the offense, the Petitioner cannot show that he was prejudiced by the manner in which his trial attorneys chose to cross-examine the victim's mother and Dr. Lakin.  The Petitioner is not entitled to relief on this basis.

### C. **Failure to Schedule Admissibility Hearing**

The Petitioner contends that his trial attorneys provided ineffective assistance in failing to schedule a hearing on lead counsel's motion pursuant to Tennessee Rule of Evidence 412, which sought admission of evidence of sexual abuse of the victim by individuals other than the Petitioner.  The Petitioner argues the evidence could have explained the hymenal notch noted during the victim's medical examination.  The State contends that because no evidence was presented at the trial to show that any physical

injuries were the result of the Petitioner's rape of the victim, the Petitioner had no need to offer proof of the victim's sexual activity with other individuals.

Tennessee Rule of Evidence 412 provides that although evidence of reputation or opinion evidence of a victim's sexual behavior or evidence of sexual behavior with an individual other than the defendant is generally inadmissible, it may be admissible in limited circumstances. Tenn. R. Evid. 412(c)(4). In order for the evidence to be admitted, a motion complying with certain requisites must be filed, and the trial court must determine at a hearing that the evidence relates to reputation or opinion regarding the victim's sexual behavior or is evidence of sexual behavior with someone other than the defendant and is offered to rebut scientific or medical evidence. *Id.* at 412(d). The court must also determine that the probative value of the evidence outweighs its unfair prejudice to the victim. *Id.* at 412(d)(4).

The Rule 412 motion alleges that the victim's great aunt revealed during defense investigation of the case that the victim told the great aunt that the victim had been "messed with" by a family member and by a friend of the victim's mother. The motion states that the defense sought to cross-examine the State's witnesses to determine if someone other than the Petitioner had sexually assaulted the victim.

At the post-conviction hearing, co-counsel testified that he did not know why lead counsel, who had filed the Rule 412 motion, had not pursued it at a hearing. Co-counsel noted Dr. Lakin's opinion that the hymenal notch was a non-specific finding that might or might not indicate sexual contact. The trial evidence supports co-counsel's testimony in this regard. *See Marvin Davis*, 2014 WL 1775529, at *2 (noting Dr. Lakin's testimony that the finding of a deep cleft or notch in the victim's hymen was "indeterminate" and that over 95% of sexual assault victims did not exhibit physical injuries).

The Petitioner contends that the evidence of sexual abuse of the victim by individuals other than him was relevant to rebut Dr. Lakin's testimony about the notch in the victim's hymen. The record reflects, however, that Dr. Lakin testified that the hymenal notch was an indeterminate finding that neither indicated nor excluded sexual assault. The Petitioner did not offer any additional proof at the post-conviction hearing regarding the interpretation of this finding. The record does not support a conclusion that the evidence would have been admissible under Rule 412's limited exception to the general rule of exclusion of evidence of a victim's other sexual behavior. Because the record does not support a conclusion that the trial court would have admitted the evidence, the Petitioner failed to show at the post-conviction hearing that counsel's performance was deficient and that he was prejudiced by counsel's alleged deficient performance. The Petitioner is not entitled to relief on this basis.

-12-

## D. Failure to Cross-Examine a Witness

The Petitioner contends that his trial attorneys failed to cross-examine Patricia Lewis, the forensic interviewer, about her use of leading questions when she interviewed the victim. The State contends that the decision to attack Ms. Lewis's testimony in closing argument was a strategic decision entitled to deference and that the Petitioner failed to establish ineffective assistance in this regard. We agree with the State.

The trial record reflects that Ms. Lewis testified for the State and that the defense did not cross-examine her. The closing arguments are not part of the trial record. At the post-conviction hearing, co-counsel testified that in most cases, a forensic interviewer would say that he or she had not asked leading questions because they were trained not to do so. He said that he had prepared lead counsel to cross-examine Ms. Lewis and agreed that lead counsel might not have asked about alleged leading questions in order to reserve the issue for closing argument. He noted that lead counsel had a good idea of how Ms. Lewis would testify at the trial because lead counsel cross-examined her at an earlier hearing.

We note that the trial court conducted a pretrial admissibility hearing regarding admission of the recorded forensic interview, which contains the alleged leading questions. *See* T.C.A. § 24-7-123 (Supp. 2012) (amended 2015) (admission of video recording or interview of child describing sexual conduct). Among the matters the court was required to consider in determining whether the recording was trustworthy included "[w]hether the statement is spontaneous or directly responsive to questions" and "[w]hether the manner in which the interview was conducted was reliable, including, but not limited to, the absence of any leading questions[.]" *Id.* § 24-7-123(b)(2)(F), (G). The record reflects that the court considered the relevant statute in making its determination regarding the admissibility of the recording. It found, in pertinent part:

> In watching the questions, it looks like Ms. Lewis worked very hard not to suggest any answers to the questions and the manner in which the interview was conducted does seem to be reliable and very little if any leading questions. Ms. Lewis was very careful not to suggest that the child's relationship to the offender makes it I think again appropriate.

The court also found that Ms. Lewis met the statutory requirements for forensic interviewers permitted to conduct interviews that are admissible pursuant to the statute. *Id.* § 24-7-123(3).

-13-

In light of the trial court's pretrial determination that Ms. Lewis had not asked leading questions in the interview, the court's ruling admitting the evidence, co-counsel's post-conviction testimony that lead counsel was prepared to cross-examine Ms. Lewis but may have instead chosen to attack her credibility in closing arguments, and the absence of the closing arguments from the record, we conclude that the post-conviction court did not err in determining that the Petitioner failed to carry his burden of showing that his trial attorneys were ineffective in not cross-examining Ms. Lewis regarding alleged leading questions. *See State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991) (stating that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight").

Turning to the question of prejudice, we again note the victim's detailed trial testimony about the facts of the offense. We note, as well, the evidence that the victim reported the offense to her mother before she was interviewed by Ms. Lewis. The victim likewise reported the facts of the offense to Dr. Lakin independently of Ms. Lewis. *See Marvin Davis*, 2014 WL 1775529, at *2-3. The evidence from the forensic interview was only one component of the State's proof of the Petitioner's guilt. We conclude that the post-conviction court did not err in determining that the Petitioner failed to establish prejudice from lead counsel's failure to cross-examine Ms. Lewis about the manner in which she questioned the victim.

The Petitioner failed to establish that lead counsel provided ineffective assistance of counsel in her decision not to cross-examine Ms. Lewis. The Petitioner is not entitled to relief on this basis.

## E. **Cumulative Effect of Errors**

The Petitioner contends that even if the individual errors and omissions of his trial attorneys failed to establish ineffective assistance of counsel, the cumulative effect of their conduct negatively impacted the outcome of his trial. The State contends that the Petitioner's claim must fail because he failed to show that his trial attorneys provided deficient performance in any of the claimed instances. We agree with the State. The Petitioner failed to show that his trial attorneys performed deficiently, and his claim that he was prejudiced by the cumulative effect of their individual errors and omissions must fail. He is not entitled to relief on this basis.

## II

## Denial of Motion to Recuse

The Petitioner contends that the post-conviction judge erred in denying a motion to recuse himself "because the judge made hearsay objections for the prosecution" at the trial. The State contends that the judge did not err in denying the motion. We agree with the State.

The Code of Judicial Conduct provides:

(A)     A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1)     The judge had a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Tenn. R. Sup. Ct. 10, Canon 2, Rule 2.11(A)(1). A judge should grant a motion to recuse if the judge has any doubts about the judge's ability to preside impartially. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994); *see Lackey v. State*, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). Likewise, recusal is appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley*, 882 S.W.2d at 820 (citing *State v. Cash*, 867 S.W.2d 741 (Tenn. Crim. App. 1993)). An appellate court conducts a de novo review of a trial court's denial of a motion to recuse. Tenn. R. Sup. Ct. 10B, § 2.01.

The Petitioner's complaint relates to the following, which occurred during examination of a defense witness at the trial:

Q. [Lead Counsel:] [D]id you hear what he said on the phone? Don't tell me what he said on the phone but did you hear what he said?

A.     I heard him say I didn't do that.

[Prosecutor]:          Objection, Your Honor, hearsay.

[Lead Counsel]:     I'm sorry, Judge.

-15-

The Court:    Sustained.

Q. [Lead Counsel:]  Whose idea was it to go to the hospital?  There was a decision made to go to LeBonheur Hospital?

A.      Mr. Davis.  He said –

The Court:    You can't tell us what somebody said.

The Petitioner argues that the judge's admonition to the witness amounted to the judge's "inserting himself into the role of the prosecution making objections to hearsay statements."  We disagree.  The prosecutor made a hearsay objection, and the court sustained the objection.  When the witness offered further hearsay testimony, the court *sua sponte* instructed the witness not to testify about what another person said.  In the previous instance, the court had not explained the basis of the ruling to the witness, and its subsequent admonition explained the limits of permissible testimony.  This instance was a single occurrence in one witness's trial testimony and fails to indicate bias toward the State or prejudice against the Petitioner that precluded the judge from impartial consideration of the Petitioner's post-conviction action.  The court did not err in denying the motion to recuse.  The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE