IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 8, 2020

## CURTIS JOHNSON, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
No. C-18-291          Donald H. Allen, Judge

_____

### No. W2019-01809-CCA-R3-PC

_____

Following a bench trial, the Petitioner, Curtis Johnson, Jr., was found guilty of three counts of aggravated robbery, one count of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony.  The trial court imposed an effective sentence of twenty-four years.  This court affirmed the trial court's judgments on appeal. *State v. Curtis Johnson, Jr.*, No. W2016-02439-CCA-R3-CD, 2018 WL 324455 (Tenn. Crim. App., at Jackson, Jan. 5, 2018), *no perm. app filed*.  The Petitioner timely filed a post-conviction petition, alleging that he received the ineffective assistance of counsel.  After a hearing, the post-conviction court denied relief, concluding that the Petitioner had not proven Counsel was deficient or shown prejudice.  On appeal, the Petitioner maintains his ineffective assistance of counsel claims.  After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Curtis Johnson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

On August 8, 2015, the Petitioner entered an apartment in Jackson, Tennessee, held four people at gunpoint, and stole several items.  A Madison County grand jury indicted the Petitioner for three counts of aggravated robbery, one count of especially

aggravated kidnapping, one count of aggravated burglary, and one count of employing a firearm during the commission of the aggravated burglary. The Petitioner was also indicted for five counts of violating the gang enhancement statute, which were subsequently dismissed before trial. This court summarized the facts presented at the bench trial and sentencing as follows:

Investigator Nicholas Donald with the Jackson Police Department testified that, on August 8, 2015, he responded to a residential burglary call. The three victims, Robert Smith, Cynthia Smith, and their grandson T.A., told Investigator Donald that a man had followed T.A. inside the apartment, held them at gunpoint, and taken several items, including various electronics and cell phones. Investigator Donald testified that, a few days later, one of the stolen cell phones was located in Memphis and officers determined that the [Petitioner] was a suspect. The victims subsequently identified the [Petitioner] in photographic lineups, and the [Petitioner] was arrested.

Investigator Donald interviewed the [Petitioner] on August 15, 2015. After signing a waiver of his *Miranda* rights, the [Petitioner] provided the following written statement:

I was with some partners from Memphis on Saturday and we came down to Jackson. My partner, KO, was driving. Me, Shawn Wright, Montrell Henry, Floyd Smith, and Levert were all in the truck. We were in a white SUV and we stopped at a gas station off of the interstate. We got to Jackson and were riding around. Montrell and Shawn jumped out on a guy in a parking lot and robbed him. It was in the evening time and it was about to get dark[,] I believe. After that we went to Cherry Grove apartments. We were sitting in the car and everybody saw this young black male and a young female. Montrell was about to rob the young female but she drove off before he could. I got out of the car and walked toward the young black guy and Shawn, and Floyd followed me. I walked in the apartment behind the dude and saw an older dude in the house too. I locked the door behind me. I asked the young dude if he knew me and the old dude asked me if I wanted to play tennis. I pulled out a black handgun from my waist and I told them to put everything in the bag. The older guy dumped some boxes of bullets out of a bag. Everybody got on the ground. I was surprised when I seen

- 2 -

[sic] the older lady and the little boy. I put the Xbox in the bag and the older guy put the cell phones and [i][P]ads in the bag. I took some keys too. I started going through the house and I saw a safe in the backroom. I saw a sticker on the safe that was a sheriff's department star or something. I didn't know what to think when I saw it. I got everything in the bag and left. I dropped the bags off by the dumpster and ran to jump in the truck. KO drove around and Shawn picked up the bags and put them in the truck. Montrell threw the car keys in the dumpster. We all got in the truck and got back on the highway and headed to Memphis. Montrell and me started going through bags and threw out bullets and the [i][P]ad on the highway. On Sunday I met a girl named Erica in east Memphis and gave her a ride to Northwood Hills and sold her one of the phones.

Sixteen-year-old T.A. testified that, on the evening of August 8, 2015, he was walking home to the apartment he shared with his parents and four-year-old brother, A.A. At the time, T.A.'s grandparents, Robert and Cynthia Smith, were staying at the apartment while T.A.'s parents were on vacation. T.A. said that he noticed a group of men "looking at [him]" while he was walking back, but he did not think it was unusual. T.A.'s grandfather was standing outside the apartment and, once they both walked inside, T.A. noticed the [Petitioner] standing in the doorway. The [Petitioner] asked T.A. if he knew him, and T.A. told him he did not. The [Petitioner] then pulled out a gun and told T.A., A.A., and their grandparents to get on the floor. T.A. testified that the [Petitioner] began taking items from the apartment, including an iPad, cell phones, an Xbox, a watch, car keys, and cash. The [Petitioner] saw some ammunition and demanded guns; however, the guns were locked in a safe that T.A. could not open. After the [Petitioner] left, T.A. locked the door and called the police. T.A. confirmed giving a description of the [Petitioner] and a written statement to Investigator Donald. T.A. also confirmed identifying the [Petitioner] in a photographic lineup a few days later.

T.A.'s grandparents testified similarly. Robert Smith said that the [Petitioner] patted him down and began demanding guns. Smith said that the [Petitioner] took his watch, cell phone, laptop, and his car and house keys. The [Petitioner] also told the family to stay inside because he had friends waiting for them outside. Cynthia Smith corroborated her husband's testimony and said that she was holding A.A. during the robbery.

At the conclusion of the bench trial, the trial court found the [Petitioner] guilty of all three counts of aggravated robbery, aggravated burglary, and employing a firearm during the commission of the aggravated burglary. The trial court found the [Petitioner] not guilty of the especially aggravated kidnapping of A.A.

Sentencing Hearing. At the sentencing hearing, the [Petitioner]'s presentence report was admitted without objection. The State presented testimony from Investigator Michael Byrd with the Jackson Police Department Gang Enforcement Team. Investigator Byrd testified that he was present for the [Petitioner]'s arrest in Memphis and that, on the way to Jackson, the [Petitioner] told Investigator Byrd that he was a member of a gang known as the "Unknown Vice Lords." Investigator Byrd said that he confirmed the [Petitioner]'s gang membership with the Memphis Gang Unit.

At the hearing, Investigator Byrd identified multiple photographs from Facebook showing the [Petitioner], individually and with other men, displaying guns with extended magazines, AR-style guns, large amounts of cash, and "known Vice Lord gang sign[s]." Investigator Byrd also identified three Facebook videos—one video uploaded in July 2015 showed the [Petitioner] assaulting another individual and the other videos showed the [Petitioner] talking about being out on bond and displaying a firearm. On cross-examination, Investigator Byrd said that the photos and videos appeared to be posted on Facebook in 2014 and 2015 and that he could not definitively say when they were taken.

The [Petitioner] presented testimony from his sister, Simone Dotson. Dotson testified that the [Petitioner]'s older sister was murdered in August 2014 and that, after her death, the [Petitioner] began abusing alcohol and drugs. Dotson said that the [Petitioner] appeared optimistic since his incarceration and wanted to finish school and provide for his son. The [Petitioner]'s mother, Catherine Sutton, also testified that the [Petitioner] had "changed" and was remorseful for what he did.

The trial court sentenced the [Petitioner] as a Range I, standard offender to twelve years for each aggravated robbery conviction, six years for the aggravated burglary conviction, and six years for employing a firearm during the commission of the aggravated burglary. The court ordered the twelve-year sentences to run concurrently and each six-year

- 4 -

sentence to run consecutively to the twelve-year sentence for an effective sentence of twenty-four years. The trial court also ordered the [Petitioner] to pay restitution to the victims.

*Johnson*, 2018 WL 324455, at *1-2. This court affirmed the convictions on appeal. *Id.* The Petitioner timely filed a petition seeking post-conviction relief. He alleged ineffective assistance of counsel, asserting that his trial attorney ("Counsel") failed to file appropriate pre-trial motions, weakened his defense by failing to adequately investigate, and wrongly convinced the Petitioner to waive his right to a jury trial.

At the post-conviction hearing, the parties presented the following evidence: the Petitioner, who was twenty years old at the time of his arrest, testified that he retained Counsel to represent him on the original charges and retained another attorney for the appeal ("Appellate Counsel"). The Petitioner recalled that Counsel met with him to discuss his case, possible defenses and motions, and to review discovery materials. The Petitioner asked Counsel about filing a motion to change venue because the victims were related to a City of Jackson police officer. The Petitioner described Counsel's response to this request as "a blow off."

The Petitioner testified that the State made an offer to settle the case for a sentence of twenty-five years. The Petitioner asked Counsel to try to negotiate a lower sentence with the State. Counsel never informed the Petitioner about the outcome of any further negotiations with the State. The Petitioner agreed that he was initially charged with especially aggravated kidnapping but that the trial court had found him not guilty as to that count of the indictment. His twenty-four year sentence was the result of the trial court imposing consecutive sentences.

The Petitioner testified that he asked Counsel to file a motion for recusal of the trial judge because he "felt like [the trial judge] was biased." He explained his belief was based upon the fact that "the police" and the trial judge "work[ed] under . . . the same jurisdiction." The Petitioner stated that, had the proposed recusal been successful, he believed his case "would have been a lot better," and he would have received a lesser sentence.

The Petitioner testified that he asked Counsel to file a motion to dismiss the charges for aggravated burglary and employing a firearm in the commission of a dangerous felony because he did not enter the apartment without permission. He said that Counsel did not file the requested motion and told him that such a motion was not "good" for the Petitioner.

- 5 -

The Petitioner recalled that he was initially indicted for violating the gang enhancement statute but the State subsequently dismissed those charges. At the sentencing hearing, however, Counsel "let the D.A. use it as a tool." At the sentencing hearing, the State offered pictures and video in support of the trial court finding gang affiliation as an enhancement for sentencing purposes. According to the Petitioner, Counsel did not object to the State's offer of the photographs or videos. The Petitioner believed that his sentence would have been shorter if the State had been prevented from entering that evidence.

The Petitioner testified that Counsel did not adequately investigate the case in preparation for trial. The Petitioner asked Counsel to speak with the victims about their potential testimony, and Counsel failed to do so. Further, Counsel failed to interview any witnesses from the apartment complex in preparation for trial. The defense strategy at trial was to challenge the especially aggravated kidnapping charge in hopes of a dismissal and attack the burglary charge by showing that the Petitioner did not "force entry." Despite Counsel's arguments against the burglary charge, the trial court found the Petitioner guilty.

The Petitioner testified that Counsel also failed to subpoena all of the victims' medical records. The Petitioner conceded that he never asked Counsel to do so but asserted that Counsel "should know" to subpoena medical records. The Petitioner agreed that he and Counsel had a "pretty good relationship." Counsel advised the Petitioner to "be honest" during his interview for the presentence report. Counsel, however, did not advise him that his statements could be used against him during the sentencing phase. The Petitioner said that had he known that his statements would be used to enhance his sentence, he would not have "been honest."

The Petitioner testified that he wanted a jury trial but that Counsel "recommended" a bench trial. Counsel believed a jury would view the Petitioner's conduct as a kidnapping. Based upon Counsel's recommendation, the Petitioner agreed to a bench trial. The Petitioner stated that he thought it was possible a jury would have convicted him of a lesser offense. The Petitioner agreed that he gave an incriminating statement to the police.

On cross-examination, the Petitioner agreed that he was not challenging the guilty finding rather he wanted a lesser sentence.

Counsel testified that he met with the Petitioner numerous times and discussed potential defenses and trial strategy. He recalled that, in light of the Petitioner's confession, his strategy was to convince the State to dismiss the especially aggravated kidnapping charge. When the State refused to do so, Counsel prepared to argue to the

trial court that the Petitioner was not guilty of especially aggravated kidnapping. A dismissal of the especially aggravated kidnapping charge would also result in a dismissal of the firearm enhancement charge.

Counsel did not recall discussing a change of venue with the Petitioner. Counsel stated that, if the Petitioner had inquired about a change of venue, Counsel would have advised that success would be highly unlikely given there was "no publicity about the case." Likewise, Counsel did not remember discussing a recusal motion with the Petitioner. Counsel confirmed the Petitioner's concern that two of the victims in this case were a Jackson police officer's children. He stated that, had the Petitioner raised this motion with him, he would have advised the Petitioner that a successful motion to recuse would have been unlikely on the basis that the law enforcement officer and the trial judge served in the same jurisdiction. Counsel stated that he was unaware of any connection between the police officer and the trial judge other than both served in Jackson, Tennessee. Counsel testified that he did not see any basis to file a motion for change of venue or a motion for recusal of the trial judge.

Counsel testified that he negotiated with the State hoping to resolve the case through a plea agreement. The State would not agree to dismissal of the especially aggravated kidnapping charge or any sentence less than twenty-five years to be served at 100%. Based upon the State's position, the Petitioner wanted to proceed to trial. Counsel was concerned that it would be difficult to get a jury to fairly evaluate the charges because the Petitioner admitted to the robbery. Counsel recalled that the Petitioner initially mentioned a bench trial. Counsel was hesitant about a bench trial due to the severity of the charges, but as they discussed the option, he agreed that a bench trial was "the best course of action." Counsel believed that the trial court might be in a better position to assess whether the kidnapping was incidental to the robberies. Following the bench trial, the trial court found there was no proof that a kidnapping had occurred.

Counsel testified that the trial strategy was "to get a not guilty on the [especially aggravated] kidnapping" and the aggravated burglary. The Petitioner had admitted to the robbery and all of the witnesses involved testified at trial. Counsel was unaware of any other witnesses or what other witnesses might have contributed to the defense since the Petitioner admitted his presence and involvement.

Counsel testified that he met with the Petitioner before the pre-sentence report interview and told the Petitioner to "tell the truth." Counsel was aware of the Petitioner's drug use and was concerned that dishonesty or a lack of candor could "backfire" on the Petitioner. At the sentencing hearing, Counsel objected to the State's introduction of

pictures and videos involving criminal activity, but the trial court found the evidence relevant and admissible.

Counsel testified that he did not have any recollection of a discussion about obtaining the victims' medical records but that he did not think medical records would have been relevant to the factual question of whether the Petitioner committed aggravated burglary and especially aggravated kidnapping.

On cross-examination, Counsel testified that he obtained and reviewed discovery with the Petitioner. The Petitioner's admission to the aggravated robberies left little to dispute in the case. Counsel recalled that the trial court advised the Petitioner that he had a right to a jury trial, and the Petitioner waived that right. Counsel believed that, to some degree, the bench trial was successful because the trial court found the Petitioner not guilty of the especially aggravated kidnapping charge.

After hearing the evidence, the post-conviction court took the matter under advisement and issued a letter with findings of fact and a subsequent order denying relief. The post-conviction court provided the following findings of fact:

> The Court credits the testimony of [Counsel] when he testified that there was no legal basis or grounds upon which to seek a change of venue or to seek a recusal of the trial court Judge. I further credit his testimony that the [Petitioner] knowingly and voluntarily waived his right to a Jury trial in this case, and believed that a Bench trial was a better trial strategy in trying to have the Especially Aggravated Kidnapping charge dismissed. Ultimately, that trial strategy worked because the Court dismissed that one charge, which was in fact the most serious charge for which the [Petitioner] was being tried.

> The [Petitioner] acknowledged that he had made a full confession to the three charges of Aggravated Robbery against the three separate victims [ ]. In his confession to the police, which was introduced into evidence at this trial, he admitted to entering into the three victims' apartment with a black handgun, and with the intent to commit a robbery while armed with this firearm, locking the door behind him after entering, and ordering the three individuals at gunpoint to "put everything in the bag" (Cell phones, I Pads, Keys, X-Box, bullets, etc.) His confession, along with the eyewitness testimonies and their identification, that the [Petitioner] was the person who had in fact robbed them at gun point after entering into their apartment without their permission or consent, was part of the evidence against him at trial.

The [P]etitioner testified that he knew he would be serving some jail or prison time for what he did, but that he was just hoping for a "lighter" or lesser sentence for his crimes. He said he had a good working relationship with [Counsel], who had met with him numerous times while he was in custody prior to the trial date. He claims that his attorney was also ineffective for not subpoenaing the victims' medical records, but he failed to offer any reason why such was even slightly relevant to his case. He testified and agreed he had "no defense to offer at his trial" and that he agreed with the decision that he made with his attorney's advice that a Bench Trial was the better option than a Jury trial.

He also testified that his attorney advised him to be "honest" with the presentence investigation reporter about his past illegal drug usage, but that now he "would have lied" since he believes it hurt him at his sentencing hearing.

The Court credits the [P]etitioner's testimony that he was guilty of the "Aggravated Robberies", but that he would have preferred a lesser sentence for his crimes. . . .

The Court also credits [Counsel] that he met with his client numerous times pre-trial and the [sic] he and his client developed a trial strategy, which included waiving of a Jury trial.

After considering all of the evidence in this case, the Court finds that the [P]etitioner has failed to prove the allegations in his petition by clear and convincing evidence, therefore his Petition for Post Conviction Relief will be denied.

It is from this judgment that the Petitioner appeals.

## I. Analysis

On appeal, the Petitioner maintains that Counsel was ineffective. Specifically, he asserts that Counsel: (1) failed to file appropriate pre-trial motions; (2) failed to adequately investigate his defense; and (3) provided erroneous advice to waive the Petitioner's right to a jury trial. The State responds that the Petitioner has not proven his claims or shown any prejudice resulting from Counsel's representation. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House*

*v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### A. Pre-Trial Motions

The Petitioner argues that he asked Counsel to file pre-trial motions and that Counsel failed to do so. Specifically, he testified at the post-conviction hearing that he asked Counsel to file a motion for change of venue and a motion for recusal of the trial judge.

At the post-conviction hearing, the Petitioner testified that he wanted a change of venue because the victims were related to a City of Jackson police officer. Further, he wanted Counsel to file a motion for recusal of the trial judge. He asserted that because the trial judge and the police officer worked in the same jurisdiction, the trial judge could not be fair and impartial. Counsel testified that he did not recall discussing either motion with the Petitioner; however, he did not believe there was a basis for filing the motions. He explained that there was no publicity surrounding the crimes, and therefore, a motion for a change of venue would likely be unsuccessful. Counsel testified that he was unaware of any relationship between the trial judge and the police officer other than the fact that both worked in Jackson. The trial court credited Counsel's testimony regarding the motions.

The evidence does not preponderate against the post-conviction court's findings of fact. The Petitioner offered no proof that either motion would have succeeded. His testimony was that he wanted Counsel to file those motions and Counsel did not. Counsel testified that he did not believe the motion for a change of venue would be successful since there was no publicity surrounding the crimes. *See* Tenn. R. Crim. Pro. 21. He likewise believed that a motion for recusal would have been unsuccessful as there was no proof of any relationship or connection between the trial judge and the police officer that would cause impartiality or cause question of the trial judge's impartiality. *See Lackey v. State*, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). The Petitioner has not shown deficient performance or prejudice from the absence of a motion for change of venue or a motion for recusal of the trial judge and, therefore, is not entitled to relief as to this issue.

## B. Witnesses

The Petitioner argues that Counsel failed to adequately investigate other potential witnesses who may have supported his defense. The Petitioner, however, fails to identify who these potential witnesses might have been and failed to present testimony from these witnesses at the post-conviction hearing.

This court has addressed the proof required when a petitioner alleges ineffective assistance of counsel on the basis of counsel's failure to present a witness at trial:

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was

not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*.

*Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

Without the testimony of the witnesses the Petitioner alleges Counsel should have presented, this court may not speculate as to what the witnesses might have said or whether the witnesses might have been credible. *See Black*, 794 S.W.2d at 758. Accordingly, we conclude that the Petitioner has not shown that Counsel was deficient or that he was prejudiced by the alleged deficiency. The Petitioner is not entitled to relief as to this issue.

### C. Bench Trial

Finally, the Petitioner asserts that his young age, twenty years old at the time of his arrest, paired with his lack of experience with legal matters, caused him to rely on Counsel's faulty advice to proceed with a bench trial rather than a jury trial.

Counsel testified that it was the Petitioner who first raised the idea of proceeding with a bench trial. Counsel initially felt hesitant about pursuing a bench trial due to the gravity of the offenses. Counsel's concerns, however, regarding a jury's ability to distinguish whether the kidnapping was attendant to the robbery, caused him to agree that a bench trial was a better option.

The particular manner of defense is a strategic decision left to competent counsel. *Felts v. State*, 354 S.W.3d 266, 281 (Tenn. 2011). Based upon Counsel's legal experience and knowledge, the Petitioner did not believe the State could prove that an especially aggravated kidnapping occurred. After determining the State was unwilling to

dismiss the especially aggravated kidnapping, Counsel considered a bench trial versus a jury trial and advised the Petitioner that the trial court would be in a better position to evaluate whether the alleged kidnapping was part of the robbery. Based on Counsel's advice, the Petitioner opted for a bench trial and waived his right to a jury trial. After the bench trial, the trial court, consistent with Counsel's strategy, found the Petitioner not guilty of especially aggravated kidnapping. The Petitioner cannot prove prejudice under these circumstances. The Petitioner made an informed decision, based on the well-reasoned advice of Counsel, to opt for a bench trial. The Petitioner's decision to have a bench trial resulted in a not guilty verdict as to especially aggravated kidnapping, which benefitted the Petitioner.

Accordingly, we conclude that the Petitioner has failed to show that Counsel's advice to proceed with a bench trial was deficient or that the Petitioner was prejudiced by this strategy. The Petitioner is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

- 14 -